IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| JOHN J. FORD, III and | * | Case No. 1-04-06493 |
| BARBARA FORD, | * | |
|     Debtors | * | |
| | * | |
| CAPITAL REGION ECONOMIC | * | |
| DEVELOPMENT CORPORATION, | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| JOHN J. FORD, III and | * | |
| BARBARA FORD, | * | |
|     Respondents | * | |

## OPINION

Before the Court is the objection of Capital Region Economic Development Corporation ("CREDC") to the chapter 13 plan of John J. and Barbara Ford ("Debtors"). The plan proposes to employ 11 U.S.C. §506(b) to modify CREDC's secured claim.[1] For the reasons set forth below, I will overrule the objection.

## Procedural History

On October 29, 2004, Debtors filed a petition under chapter 13. In their schedule of real property, they listed their residence located on Byron Nelson Circle, Etters, Pennsylvania, and

---

[1] The modification at issue is colloquially known as a "cramdown" or "strip off." Cramdown is a term of art used to refer to the bifurcation of a claim into secured and unsecured portions pursuant to 11 U.S.C. § 506. Section 1325(a)(5) permits a chapter 13 debtor to provide different treatment in the plan for the unsecured portion of the claim. The secured creditor's claim is limited to the market value of the collateral to which the lien attaches. When the value of a claim is crammed down to zero, this process also is referred to as stripping off a claim. *In re Bartee,* 212 F.3d 277, 280 (5th Cir. 2000).

1

valued the home at $159,000.00. The petition listed CREDC as holding a claim of $118,623.00 secured in part by a third mortgage on the residence. Waypoint Bank was listed as holding a first mortgage in the amount of $106,843.00, and Bank One was listed as holding a second mortgage in the amount of $49,015.00. Debtors's chapter 13 plan, which was filed on November 19, 2004, stated that the value of the residence was $72,000.00 and that there was insufficient equity in the residence to secure CREDC's claim. Therefore, the plan proposed to treat CREDC's claim as unsecured and strip off its lien. On January 11, 2005, CREDC filed an objection to Debtors' plan arguing that 11 U.S.C. §1322(b)(2) prohibits modification of its lien. A hearing was held on March 22, 2005, and the parties filed briefs thereafter. The matter is ready for decision.[2]

## Discussion

CREDC's claim is secured by liens on various types of collateral – (1) Debtors' residence; (2) certain real property owned by the parents of Barbara Ford ("Barbara"); and (3) accounts receivable, inventory, equipment and supplies of Balance IT, LP, an entity in which Barbara is the limited partner.[3] CREDC asserts that since its claim was secured by property owned by persons and entities other than Debtors, it's lien iss not subject to modification under Section 1322(b)(2). It is this contention that draws the issue in this case.

CREDC cites no cases in support of this proposition. The dearth of authority to support

---

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. These matters are core pursuant to 28 U.S.C. §157(b)(2)(A),(L) and (O). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] A corporation that Barbara wholly owns, WPG Technology, Inc. is the general partner.

2

its position suggests that the language of the statute is clear on its face. Section 1322(b)(2) allows modification of "the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. §1322(b)(2). In the instant case, CREDC's claim is not secured only by a security interest in real property that is Debtors' principal residence, instead it is secured by a variety of other collateral. "As the Court of Appeals for the Third Circuit held in *In re Hammond*, a claim secured by *any other real property*, or by personal property of the estate or of the debtor, *or by the property of another* may be modified by the chapter 13 plan." *Collier on Bankruptcy,* 15th Edition Revised, ¶1322.06[1][a][ii] (citing *In re Hammond*, 27 F.3d 52 (3rd Cir. 1994) (italics added)). "[S]ection 1322(b)(2)'s language plainly states that a mortgagee who has an additional security interest gets no protection from the anti-modification clause of Section 1322(b)(2)." *Hammond*, 27 F.3d at 57.

      CREDC argues that the policy behind the enactment of Section 1322(b)(2) supports its position that the anti-modification clause does not apply to Debtors' loan. This argument also is without merit. Section 1322(b)(2) was enacted in order to "protect lenders of residential mortgages because they provide a valuable economic and social service when they make such funds available." *Hammond,* 27 F.3d at 57. CREDC is not in the business of making home loans. It is in the business of promoting commercial economic growth within a certain geographical area. Therefore, it is clear on the face of the statute that the power of a chapter 13 debtor under Section 1322(b)(2) to modify secured loans is applicable to CREDC's mortgage.

3

Case 1:04-bk-06493-MDF    Doc 35    Filed 07/21/05    Entered 07/22/05 08:15:55    Desc
Main Document      Page 3 of 4

Accordingly, CREDC's objection to the plan will be overruled. No other objections having been filed, the Plan will be confirmed. An appropriate order will be entered.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date:  July 21, 2005

*This electronic order is signed and filed on the same date.*